IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JOSEPH R. PERRY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-546 (AJT/JFA) |
| | ) | |
| COMMONWEALTH OF VIRGINIA, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **ORDER**

Plaintiff Joseph R. Perry, Jr. claims that the Defendants unconstitutionally and unlawfully, in violation of state law, deprived him of his driver's license, wrongfully prosecuted him for driving without a license, and attempted to cover it up over the course of twenty-six years.

The Defendants are (1) the Commonwealth of Virginia; Richard B. Potter, in his individual capacity and also in his official capacity as a Virginia Circuit Court judge ("Judge Potter"); the Circuit Court of Prince William County; and the Virginia Department of Motor Vehicles ("DMV") (collectively "the Commonwealth Defendants"); (2) Paul B. Ebert, in his individual capacity and also in his official capacity as Commonwealth's Attorney for Prince William County; the Prince William County Commonwealth Attorney's Office; Louis J. Rusk, in her individual capacity and also in her official capacity as Deputy Clerk for Prince William County Circuit Court; Charlton E. Gnadt, in his individual capacity and also in his official capacity as Clerk of Court for Prince William County; and unnamed Prince William County Circuit Court Clerks from June 8, 1990, to May 7, 2015 (collectively "the Prince William County

1

defendants").[1] Presently pending are (1)the Prince William County Defendants' Motion to Dismiss for Insufficient Service of Process [Doc. No. 24]; the Commonwealth Defendants' Motion to Dismiss [Doc. No. 27] and Defendants Ebert and the Commonwealth Attorney's Office's Motion to Dismiss the Amended Complaint [Doc. No. 63] (collectively, the "Motions to Dismiss"); and (2) Plaintiff's Motion for Partial Summary Judgment [Doc. No. 62] and Plaintiff's Subsequent Motion for Partial Summary Judgment [Doc. No. 76] (collectively referred to as "Plaintiffs' Motion for Summary Judgment"). For the reasons set forth below, the Motions to Dismiss are all GRANTED based on the applicable statute of limitations and also either sovereign immunity, judicial immunity or prosecutorial immunity and are otherwise DENIED, Plaintiff's Motion for Partial Summary Judgment is DENIED, and the case is DISMISSED.

## I. BACKGROUND

### A.    The Habitual Offender Order

Construing his allegations liberally and collectively, Perry alleges the following:[2]

On April 2, 1990, on Defendant Ebert's motion, the Prince William County Circuit Court issued a Rule to Show Cause ordering Plaintiff to appear on May 25, 1990 to show cause why he should not have his license revoked as a habitual offender under Virginia traffic laws. Because the Prince William County courthouse was closed on May 25, 1990 for a regional judicial

---

[1] The City of Manassas, Virginia was originally joined as a Defendant, but was dismissed pursuant to the parties' joint motion. [Doc. No. 61].

[2] Perry has filed four complaints in this action. Although the Second Amended Complaint is the currently operative complaint against which the Motions to Dismiss are to be resolved, the Court has considered the allegations in all of Perry's first three filed complaints for the purposes of the defendants' motions.  On October 10, 2017, following the filing of defendants' motions directed to the Second Amended Complaint (his third complaint), Perry filed, without the required leave of court or the Defendants' written consent, a Third Amended Complaint (his fourth complaint) [Doc. No. 70]. *See* Fed. R. Civ. P. 15(a)(1)(A) and (2) (allowing a plaintiff to amend his pleading once as a matter of course within 21 days after service). By separate Order, the Court has ordered stricken that Third Amended Complaint, without leave to file a motion to further amend his Second Amended Complaint, given the futility of any amendments, given the allegations of the Third Amend Complaint.

conference, "[t]he Rule to Show Cause was fatally defective the moment it was issued," Second

Amended Complaint ("SAC") [Doc. No. 5] ¶ 47; and the hearing was ostensibly continued to

June 8, 1990 in light of the conflict. First Amended Complaint ("FAC"), Exhibits [Doc. No. 2-2]

at 2.[3] By Order dated June 12, 1990 bearing the purported signature of Judge Frank Hoss of the

Circuit Court for Prince William County, Perry was declared a habitual offender and ordered to

surrender his driver's license for ten years. SAC ¶ 54; *see* FAC Exhibits, at 4-5 (the "Habitual

Offender Order"). However, Perry received no notice of the habitual offender hearing and no

habitual offender hearing occurred. SAC ¶ 5. In fact, Perry alleges that in order to create the

appearance that the hearing actually took place, Defendant Rusk used a rubber stamp with Judge

Hoss' signature to falsify the letter continuing the habitual offender hearing as well as the order

declaring him an habitual offender. SAC ¶¶ 4. 7

**B.**  **The 1993 Arlington Prosecution**

In 1993, Perry was arrested for driving as a habitual offender in Arlington County,

Virginia (the "Arlington violation"). SAC ¶ 62. Perry filed at least two motions to vacate the

Habitual Offender Order, which were heard by Judge Potter in 1996 and 1997. SAC ¶ 66. Judge

Potter denied each of these motions as being untimely, SAC ¶ 65

**C.**  **The 2001 Arlington Prosecution**

In 2001, Perry was again arrested in Arlington County for driving while being a habitual

offender. SAC ¶ 71. At the trial in Arlington, Perry informed the court that he received no

service of process with respect to the habitual offender hearing and argued that the Habitual

Offender Order was a rubber-stamped fraud. The case was ultimately dismissed *nolle prosequi*.

SAC ¶ 75.

---

[3] Perry attached several exhibits to the Original Complaint [Doc. No. 1] and the First Amended Complaint [Doc. No. 2], but not his Second Amended Complaint ("SAC") [Doc No. 5]. Nevertheless, the Court has considered these exhibits in ruling on defendants' motions.

D.      **The 2006 Prince William County Prosecution**

In 2006, Perry was again arrested for driving as a habitual offender in Prince William County. SAC ¶ 81. The case was assigned to Judge Potter and Perry ultimately served a sentence of ten days imprisonment on weekends. SAC ¶ 40.

E.      **The 2015 Final Order**

In 2015, Perry again filed a Motion to Vacate the Habitual Offender Order in the Prince William County Circuit Court. Submitted in support of that motion is what appears to be an affidavit by Judge Hoss, whose purported signature appears on the Order, affirming that the signature on the Habitual Offender Order (entered on June 12, 1990) appears to be a rubber stamp; that all his circuit court orders were signed, not stamped; and that he had no specific recollection of signing the Habitual Offender Order. FAC Exhibits at 6. On May 7, 2015, Judge Johnston of the Prince William County Circuit Court essentially vacated the 1990 Habitual Offender Order. SAC ¶ 2; FAC Exhibits at 7. Judge Johnston's order found that "[n]otwithstanding the appearance in the Court's file of an order apparently signed by a judge, no such order has been in fact been [sic] entered . . ." and that "the Petitioner [Perry] is not a habitual offender under the [Habitual Offender Order]." *Id*.

### III. ANALYSIS

Perry's claims in this case all stem from the allegedly falsified 1990 Habitual Offender Order and his subsequent arrests and judicial proceedings based on that Order. More specifically, Perry asserts four counts in the SAC, each of which attempts to assert a number of causes of action. Summarized, those Counts allege: (1) fraud within the Prince William County Courthouse , based on the original 1990 Habitual Offender Order (Count I); (2) fraud during the 1993 Arlington County prosecution of the Plaintiff, based on his 1993 arrest and prosecution in

4

Arlington for driving as a habitual offender (Count II); (3) fraud during the second Arlington

County prosecution of the Plaintiff, based on his 2001 arrest and prosecution in Arlington for

driving as a habitual offender, which was ultimately dismissed *nolle prosequi* ( Count III): and

(4) fraud during the Prince William County prosecution of the Plaintiff, based on his 2006 arrest

and prosecution in Prince William County for driving as a habitual offender (Count IV).

**A.**     **All of Plaintiff's claims are barred by the applicable statute of limitations.**

All of Plaintiff's claims, in their various articulations and characterizations, are

essentially that he was denied due process in the above described judicial proceedings because of

the falsified Habitual Offender Order; and the only causes of action over which the Court would

have subject matter jurisdiction and which are plausibly plead are those arising under 42 U.S.C.

§ 1983, which is referenced in each Count.

Section 1983 does not have an express statute of limitations; and in Virginia, the statute

of limitations applicable to a Section 1983 claim is two years, the state's limitations period for

personal injury claims under Va. Code § 8.01-243(A). *See Wilson v. Garcia*, 471 U.S. 261, 280

(1985).   Nevertheless, while the statute of limitations is determined by state law, federal law

determines when Perry's claims accrued and whether the limitations period has been tolled. *A

Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) ("A civil rights claim

accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the

action.'") (quoting *Cox v. Stanton*, 529 F.2d 46, 50 (4th Cir. 1975)).

Based on his own allegations, Perry became aware of the alleged falsified Habitual

Offender Order, at the latest, in 1993. All of the other relied upon events occurred with his

knowledge in 2001, during the Arlington County prosecution, and in 2006, during the Prince

William County prosecution. Therefore, the limitations period for any of his claims against any

Defendant, named or unnamed, ran no later than 2008, with some claims barred much earlier. Perry filed this action on May 5, 2017. [Doc. No. 1]. The plaintiff has also failed to allege any facts that would toll the running of that limitations period to within two years of his filing this action. [4] Accordingly, all four Counts must be dismissed as untimely.

**B.      The Commonwealth Defendants are entitled to sovereign immunity.**

The Commonwealth Defendants (including Judge Potter in his official capacity, Ebert in his official capacity, and the Commonwealth Attorney's Office) are each protected from Plaintiff's claims under the doctrine of state sovereign immunity. Under the doctrine of sovereign immunity, "an unconsenting state is immune from suits brought in federal courts . . . ." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The defense of sovereign immunity is not limited to the state itself, but extends to the states agencies and officers sued in their official capacity. *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001) ("Even though the language of the Eleventh Amendment preserves sovereign immunity of only the *States* of the Union, it is settled that this protection extends also to state agents and state instrumentalities.") (emphasis in original) (internal quotation marks and citations omitted). None has waived immunity in this case.

In determining whether an entity is an arm of the state for sovereign immunity purposes, the Supreme Court of the United States has instructed that the "impetus for the Eleventh

---

[4] In support of his tolling claim, Perry asserts that "[i]t was absolutely necessary for the Plaintiff to have the June 8, 1990, fraud and forgery overturned prior to filing this instant action at law." Pl.'s Opposition to Defendants' Motion to Dismiss [Doc. No. 37] 7. There is no authority for this contention and Perry cites none. Obtaining relief from the Habitual Offender Order is not an element of his Section 1983 claims; and Perry learned of the facts and suffered the injury that he relies upon to support his claims long before his Habitual Offender Order was vacated in 2015. Perry implies that the *Rooker-Feldman* doctrine, which prevents a United States District Court from engaging in appellate review of state court decisions, supports his contention. *See* Pl.'s Supplemental Brief and Argument [Doc. No. 75] 36. Here, however, Perry does not seek direct review of the Habitual Offender Order, but asserts causes of action for allegedly unconstitutional actions that lead to the Habitual Offender Order and his subsequent prosecutions. Additionally, the *Rooker-Feldman* doctrine is a rule of subject matter jurisdiction and does not serve as the basis for any tolling of the applicable limitations period.

Amendment [is] the prevention of federal-court judgments that must be paid out of a State's treasury." *Hess v. Port-Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994). Any judgment in this case against the Commonwealth Defendants (including Judge Potter in his official capacity), Ebert (in his official capacity), or the Commonwealth Attorney's Office would in essence be a judgment against the Commonwealth because it would burden the Commonwealth's treasury. Therefore, the umbrella of sovereign immunity extends over these Defendants.

**C.      Judge Potter is entitled to absolute judicial immunity with respect to claims against him in both his official and individual capacities.**

Judge Potter is entitled to absolute judicial immunity in his individual and official capacities. The Supreme Court has recognized the "'immunity of judges from liability for damages for acts committed within their judicial jurisdiction,' even if such acts were allegedly done either maliciously or corruptly." *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). A judge is entitled to absolute immunity so long as the action in question (1) was not undertaken in "clear absence of all jurisdiction," and (2) was in fact a judicial act. *Stump v. Sparkman*, 435 U.S. 349, 360–62 (1978) (internal citations and quotation marks omitted). In determining whether an act was undertaken in clear absence of all jurisdiction, "the scope of the judge's jurisdiction must be construed broadly." *Stump* at 356. Here, Plaintiff essentially alleges that Judge Potter was wrong to deny Plaintiff's motions to vacate the Habitual Offender Order and that his denials were "void *ab initio*." SAC ¶ 65. But nothing in Perry's complaints plausibly alleges that Judge Potter lacked jurisdiction to hear and decide Plaintiff's motions to vacate. Judge Potter clearly had subject matter jurisdiction to consider Plaintiff's motions, *see* Va. Code § 17.1-513, and his decisions denying Plaintiff's motions are clearly "judicial acts." Judge Potter is therefore entitled to judicial immunity.

**E.      Defendant Ebert is entitled to prosecutorial immunity with respect to claims against him in both his official and individual capacities.**

Defendant Ebert is entitled to prosecutorial immunity, including in his individual capacity. "[A]bsolute prosecutorial immunity is essential for activities 'intimately associated with the judicial phase of the criminal process . . . .'" *Carter v. Burch*, 34 F.3d 257, 261 (4th Cir. 1994) (quoting *Imbler v. Patchman*, 424 U.S. 409, 430 (1976)). While the exact scope of what activities are "intimately associated with the judicial phase of the criminal process" can be uncertain, where a prosecutor's alleged wrongdoing in a civil case consists of "initiating a prosecution and . . . presenting the State's case, the prosecutor is immune from a civil suit for damages . . . ." *Imbler*, 424 U.S. at 430. Here, the allegations against Ebert consist entirely of core protected prosecutorial behavior. In Count I, Perry alleges that "Civil process was initiated by defendant Ebert as evidenced by his signature on the Information filed in April 2, 1990." SAC ¶ 46. Count I further alleges that "[a]ll defendants particularly Ebert, Gnadt and Rusk had the responsibility to correct this error and did nothing," SAC ¶ 48. Other than alleging that Ebert was copied on the letter allegedly forged by Defendant Rusk, these allegations represent the entirety of the alleged conduct by Ebert.  Likewise, Counts II through IV contain no allegations against Ebert. As the Supreme Court made clear in *Imbler*, such core prosecutorial conduct, viz., signing a criminal information and prosecuting the State's case, enjoy absolute prosecutorial immunity. Therefore, the Second Amended Complaint fails to state a claim against Defendant Ebert in either his official or individual capacities.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Motions to Dismiss [Doc. Nos. 24, 27, 63] be, and the same hereby are, GRANTED on the grounds of the statute of limitations, and also either sovereign immunity, judicial immunity or prosecutorial immunity, and are otherwise DENIED; and it is further

ORDERED that the Second Amended Complaint [Doc. No. 5] be, and the same hereby is, DISMISSED; and it is further

ORDERED that Plaintiff's Motion for Partial Summary Judgment [Doc. No. 62] and Subsequent Motion for Partial Summary Judgment [Doc. No. 76] be, and the same hereby are, DENIED.

The Clerk is directed to forward copies of this Order to all counsel of record and to the *pro se* Plaintiff Joseph R. Perry, Jr., and to enter judgment in favor of Defendants pursuant to Fed. R. Civ. P. 58.

**This is a final order for purposes of appeal**. To appeal, Plaintiff must file a written Notice of Appeal with the Clerk of the Court within thirty (30) days of the date of this Order. A Notice of Appeal is a short statement stating a desire to appeal an order and identifying the date of the order Plaintiff wishes to appeal. Failure to file a timely Notice of Appeal waives Plaintiff's right to appeal this decision.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
November 9, 2017

9